IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DAVID W. THOMPSON,           )
                            )
            Plaintiff,       )
                            )
                            )      CIV-09-713-HE
v.                          )
                            )
MICHAEL J. ASTRUE,          )
  Commissioner of Social Security  )
    Administration,          )
                            )
            Defendant.       )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his application for a period of disability and disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423.

Defendant has answered the Complaint and filed the administrative record (hereinafter

TR___), and the parties have briefed the issues.   The matter has been referred to the

undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

§636(b)(1)(B).   For the following reasons, it is recommended that the Commissioner's

decision be reversed and remanded for further proceedings.

I. Background

In his application filed February 1, 2007 (protective filing date), Plaintiff alleged that

he became disabled on May 17, 2006, due to degenerative disc disease in his lower back. (TR

1

100-103, 112, 116). Plaintiff stated that he was unable to lift over ten pounds, bend, kneel, squat, or crawl, and that he stopped working on May 17, 2006, due to an on-the-job injury. (TR 116). In later administrative filings, Plaintiff stated that an additional disabling condition of severe nerve root impingement in his cervical spine began in August 2007. (TR 155).

Plaintiff described previous work as an oilfield equipment repair technician, airplane parts technician, personal water craft technician, and trailer mechanic. (TR 117, 135-139). Plaintiff stated he had a general equivalency degree and vocational training as a marine technician. (TR 121). Plaintiff's application was denied at the initial and reconsideration levels. (TR 67-68). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Thompson ("ALJ") on August 20, 2008, at which Plaintiff and a vocational expert ("VE") testified. (TR 17-66).

The ALJ issued a decision on February 4, 2009. (TR 8-16). In this decision, the ALJ found that Plaintiff had a severe physical impairment due to disorders of the spine. However, despite this impairment, Plaintiff could perform sedentary work that did not require lifting, carrying, pushing, or pulling greater than ten pounds and that would "avoid" crawling, bending, kneeling, stooping, and squatting. (TR 12). In connection with this residual functional capacity ("RFC") finding, the ALJ found that Plaintiff's treating orthopedic surgeon, Dr. Brown, provided an opinion on October 11, 2006, concerning permanent work restrictions for Plaintiff and that this opinion was consistent with the evidence of record and entitled to "great weight." (TR 12). Relying on the VE's testimony at the hearing in response

to hypothetical questioning, the ALJ found that Plaintiff's vocational characteristics and RFC for work did not preclude him from performing jobs available in the national economy, including the jobs of power charger scale operator, paper weight tester, and film touch up inspector. Based on these findings, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act and not entitled to benefits.

Plaintiff appealed this decision to the agency's Appeals Council and submitted as additional evidence a medical source statement completed by one of Plaintiff's treating orthopedists and dated October 22, 2008. (TR 4). In a Notice of Appeals Council Action directed to Plaintiff, the Appeals Council stated that it had considered this evidence but denied Plaintiff's request for review of the administrative decision. (TR 1-4). Plaintiff now seeks judicial review of the final decision of the Commissioner.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79

F.3d 1007, 1010 (10th Cir. 1996).  The court may not reweigh the evidence or substitute its

judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs.,

961 F.2d 1495, 1498 (10th Cir. 1992).  However, the court must "meticulously examine the

record" in order to determine whether the evidence in support of the Commissioner's

decision is substantial, "taking into account whatever in the record fairly detracts from its

weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation

omitted).

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 416(I).  The Commissioner

applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R.

§404.1520(b)-(f) (2009); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.

2005)(describing five steps in detail).  Where a *prima facie* showing is made that the plaintiff

has one or more severe impairments and can no longer engage in prior work activity, "the

burden of proof shifts to the Commissioner at step five to show that the claimant retains

sufficient residual functional capacity (RFC) to perform work in the national economy, given

[the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord,

Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Steps Three, Four, and Five

Plaintiff contends that the ALJ erred by failing to provide an adequate step three

analysis of the combination of Plaintiff's spinal impairments and that this error is not harmless. In responding to this argument, the Commissioner appears to concede that the ALJ's step three analysis was not adequate. However, relying on the Tenth Circuit Court of Appeals' decision in <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729 (10th Cir. 1995), the Commissioner asserts that even if the ALJ did not provide an adequate step three analysis the ALJ's findings at the succeeding fourth and fifth steps provided substantial evidence to support the step three conclusion.

At the third step of the requisite sequential evaluation procedure, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d) (2009). <u>Bowen v. Yuckert</u>, 482 U.S. 137, 141 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." <u>Id.</u> The plaintiff has the burden of demonstrating medical evidence in the record that satisfies or equals "*all* of the specified medical criteria" contained in a pertinent listing. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).

At step three, the ALJ found that Plaintiff "has disorders of the spine which have been considered using the diagnostic and limitation criteria described in Listing 1.00 *et seq.*, Musculoskeletal System. The spinal disorders do not meet or equal any impairment set forth therein." (TR 12). Although with this finding the ALJ referred to the appropriate listing for musculoskeletal disorders, the ALJ did not discuss the evidence on which he relied to reach the step three determination. Because the evidence in this case revealed the presence of

severe spinal disorders requiring a specific analysis of the evidence in relation to the pertinent listing's criteria, this conclusory determination is error. Nevertheless, "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." <u>Fischer-Ross</u>, 431 F.3d at 733.

Plaintiff contends that the error was not harmless because he demonstrated he met Listing 1.04A in light of the evidence showing spinal stenosis, osteoarthritis, degenerative disc disease, vertebral fracture, and a compromised nerve root with neuro-anatomic distribution of pain, limitation of movement of the cervical and lumbar spine, strength loss, and sensory loss.

Listing 1.04A requires one or more disorders of the spine resulting in compromise of a nerve root or the spinal cord with:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.04A. The medical evidence in this case suggests that the criteria of Listing 1.04A may be satisfied. MRI testing of Plaintiff's lumbar spine conducted May 30, 2006, was interpreted by the radiologist as showing "[m]inimal to mild degenerative disc disease greatest at L4-5 where mild disc bulge and facet joint hypertrophy result in bilateral lateral recess stenosis (mild) and borderline spinal stenosis." (TR 163-164).

Plaintiff's treating orthopedic specialist, Dr. Smith, noted on June 1, 2006, that Plaintiff described lower back pain with left lower extremity pain as a result of a work-related injury that occurred on or about May 17, 2006, and Dr. Smith noted that on examination Plaintiff exhibited left leg pain and tingling and numbness in his left foot. (TR 172). Dr. Brown, a treating neurosurgeon, noted that Plaintiff underwent a lumbar epidural steroid injection and left sacroiliac joint block in August 2006 without improvement and that when he examined Plaintiff in September 2006 Plaintiff was walking with an antalgic gait and ambulating with a cane. (TR 186). Plaintiff also exhibited "give way weakness of the left lower extremity," unchanged from previous examination. (TR 186). Nerve conduction studies of Plaintiff conducted on October 11, 2006, were interpreted as showing "reduced left peroneal motor amplitude." (TR 182). However, Plaintiff's neurosurgeon, Dr. Brown, stated that this was a nonspecific finding and that the electromyographic studies were within normal limits. (TR 181). Dr. Brown recommended permanent work restrictions of "no lifting, carrying, pushing, or pulling of greater than 10 pounds" and the avoidance of crawling, bending, kneeling, stooping, or squatting. (TR 181).

In a consultative physical examination of Plaintiff conducted in May 2007, the physician, Dr. Mills, noted that Plaintiff exhibited "very limited range of motion" with severe pain during back movements and restricted range of hip movement which also caused low back pain. (TR 195). The physician noted that Plaintiff usually used a cane for ambulating and that without the cane he walked with a stiff limp and was unable to heel or toe walk. (TR 195). Straight leg raising tests of Plaintiff were positive for pain on the right with pain

shooting down his leg from the low back. (TR 195).

Dr. Soo, an orthopedic surgeon, treated Plaintiff beginning in 2007. In a report dated October 22, 2007, Dr. Soo noted that Plaintiff's lumbar spine revealed a single level problem over L5-S1 level with "tall disc" which the surgeon believed could be treated without surgical repair. (TR 217). Dr. Soo further noted that MRI testing of Plaintiff's cervical spine showed a "significant bilateral lateral recess spinal stenosis over C5-C6 and C6-C7" which "should be treated surgically." (TR 217). On December 14, 2007, Plaintiff underwent a cervical discectomy and fusion at two levels of his cervical spine without complications, according to Dr. Soo's operative and post-operative discharge summary reports. (TR 235, 237). In April 2008, four months following this surgery, Plaintiff reported to Dr. Soo that he was doing very well as far as neck and arm pain although his low back pain continued. (TR 321). The cervical fusion was successful, according to Dr. Soo. (TR 321).

MRI testing of Plaintiff's lumbar spine conducted in March 2008 was interpreted as showing "mild central canal space narrowing on degenerative basis bordering on early developing central stenosis" at one level and "mild stenosis" of the nerve root foramina, as well as minimal disc bulges at two other levels.(TR 256). In May 2008, Plaintiff was diagnosed by Dr. Soo with a compression fracture at the L-1 level. (TR 264). Plaintiff underwent a kyphoplasty operative procedure in May 2008 to stabilize the fracture. (TR 264-265). In July 2008, Dr. Soo conducted a lumbar discogram procedure which was "strongly positive" at one level, and Dr. Soo recommended "transforaminal lumbar interbody fusion" at this level due to Plaintiff's continuing complaint of tremendous low back pain. (TR 273,

275).  Dr. Soo stated that Plaintiff would be off work completely for twelve weeks following this surgery. (TR 276).  This surgical procedure was conducted on August 31, 2008, by Dr. Soo, and Plaintiff was discharged two days later in stable condition. (TR 286).  Five weeks after the surgery, when Plaintiff returned to Dr. Soo for follow-up examination, Plaintiff complained of gradually decreasing but still quite severe low back pain and left lower extremity radicular pain and left buttock pain. (TR 312).

Plaintiff's evidence includes the October 2008 opinion of his treating orthopedic orthopedic surgeon, Dr. Soo.  Although Dr. Soo's medical source statement was not submitted until after the ALJ's decision, Plaintiff contends that the Appeals Council erred by failing to explain what weight, if any, it gave to this opinion or provide reasons for rejecting the opinion.  If the opinion is given the controlling weight to which it is entitled, Plaintiff contends that substantial evidence supports the finding that he was disabled by a combination of spinal disorders that were of listing severity "for at least a 12 month period during 2007 and 2008." Plaintiff's Opening Brief, at 11.

The Appeals Council noted that it had considered this medical source statement.  However, the Appeals Council credited Dr. Amin, another of Plaintiff's treating orthopedic specialists, with having completed this medical source statement.  A comparison of the signature on the October 22, 2008 medical source statement with Plaintiff's other medical records indicates that the author of the medical source statement is Dr. Soo, rather than Dr. Amin. (Compare TR 298 with TR 340).  Defendant concedes that the Appeals Council erred in stating that the medical source statement was authored by Dr. Amin and admits that the

opinion was actually authored by Dr. Soo. Defendant contends that the Appeals Council was not required to provide an analysis of the treating orthopedic surgeon's statement under the well-defined standard for reviewing treating physicians' opinions and that the Appeals Council's statement that it considered the opinion was sufficient. For this contention, Defendant points to the decision by the Tenth Circuit Court of Appeals in <u>Martinez v. Barnhart</u>, 444 F.3d 1201, 1207-1208 (10th Cir. 2006).

In that case, the social security disability claimant, Mr. Martinez, asserted on appeal that the Appeals Council should have specifically discussed the effect of a treating physician's treatment records on the ALJ's decision. Noting that the Appeals Councils stated it had considered the claimant's contentions and the additional evidence submitted to it in connection with the claimant's request for review, the Tenth Circuit rejected this argument and found that the Appeals Council "adequately 'considered . . . the additional evidence,' . . . meaning that it 'evaluate[d] the entire record including the new and material evidence submitted.'" <u>Id.</u> at 1207 (quoting 20 C.F.R. § 404.970(b)).

The Appeals Council did not err in failing to explicitly consider Dr. Soo's medical source statement in its notice denying Plaintiff's request for review of the ALJ's decision. Nevertheless, the additional evidence made a part of the administrative record by the Appeals Council is assumed to be "qualifying new evidence for consideration." <u>Martinez</u>, 444 F.3d at 1207. Thus, Dr. Soo's medical source statement must be considered in determining whether substantial evidence supports the Commissioner's decision. <u>O'Dell v. Shalala</u>, 44 F.3d 855, 859 (10th Cir. 1994).

Defendant contends that Dr. Soo's medical source statement would not have changed the ALJ's decision and "is properly rejected" based on inconsistencies between the statement and Dr. Soo's treatment records. Brief in Support of Defendant's Administrative Decision, at 9. This is, of course, a *post hoc* rationale that does not appear in the Commissioner's decision and cannot provide substantial evidence to support the Commissioner's decision.

In the medical source statement completed by Dr. Soo on October 22, 2008, Dr. Soo opined that Plaintiff could sit, stand, or walk for only 30 minutes at a time and sit, stand, or walk only one hour during an 8-hour workday. (TR 339). Dr. Soo also opined that Plaintiff could frequently lift up to five pounds, occasionally lift six to ten pounds, and never lift over ten pounds. (TR 339). Additionally, Plaintiff could occasionally bend, frequently reach, but never squat, crawl, or climb. According to Dr. Soo, Plaintiff would need unscheduled breaks every 30 minutes during the workday and would, on average, be absent from work more than 4 days a month. (TR 339-340). Finally, Dr. Soo opined that Plaintiff's concentration and attention toward the performance of even simple work tasks would be impaired more than 20 % during a typical work day. (TR 340). On the statement, Dr. Soo listed positive objective signs, including reduced range of motion, muscle spasm, and tenderness, and objective testing in support of his opinion. (TR 340).

Dr. Soo's findings with respect to Plaintiff's functional capacity in October 2008 are certainly inconsistent with the ALJ's RFC finding. No administrative factfinder has provided reasons for accepting or rejecting this medical source statement by Plaintiff's treating orthopedic surgeon. The ALJ's reliance on Dr. Brown's October 2006 opinion does not

provide evidence in support of the RFC finding in light of the evidence of Plaintiff's subsequent treatment for lumbar and cervical spine degenerative disc disease and surgeries, as well as the functional capacity findings contained in Dr. Soo's October 2008 medical source statement. Because there is not substantial evidence in the record to support the ALJ's RFC finding, the ALJ's step three error is not harmless. In this case, the ALJ found that Plaintiff had the RFC for only a limited range of sedentary work. The agency has recognized that a sedentary RFC already "represents a significantly restricted range of work," Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *3, and that "a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded." Id. Given the evidence in the record, including the Plaintiff's persistent complaints of severe pain due to degenerative disc disease in his lumbar and cervical spines, objective findings of restricted range of motion, clinical signs of ambulation and functional difficulties, ongoing medical treatment by orthopedic specialists for multiple spinal disorders, multiple surgeries, and Dr. Soo's October 2008 medical source statement, there is not substantial evidence to support the Commissioner's decision. Consequently, the Commissioner's decision should be reversed and the case remanded for further administrative proceedings.

<u>RECOMMENDATION</u>

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner and REMANDING the case to the Commissioner for further administrative proceedings. The parties are advised of their

respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____May 3rd___, 2010, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____12th_____ day of ____April_____, 2010.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE